1    **POMERANTZ LLP**
Jordan L. Lurie, State Bar No. 130013

2    jllurie@pomlaw.com
Ari Y. Basser, State Bar No. 272618

3    abasser@pomlaw.com
1100 Glendon Avenue, 15th Floor

4    Los Angeles, CA 90024

5    Telephone: (310) 432-8492

6    **THE LAW OFFICE OF ROBERT L. STARR**

7    Robert L. Starr, State Bar No. 183052
robert@starrlaw.com

8    23901 Calabasas Road, Suite 2072
Calabasas, CA 91302

9

10    *Attorneys for Plaintiff*

11

12           **UNITED STATES DISTRICT COURT**

13    **CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION**

| | |
|---|---|
| 14   CYNTHIA MARTIN, on behalf of herself and others similarly situated, | Case No. |
| 15 | **CLASS ACTION** |
| 16         Plaintiff, | **COMPLAINT FOR:** |
| 17           vs. | **(1) VIOLATIONS OF CALIFORNIA BUSINESS AND PROFESSIONS CODE SECTION 17200, *ET SEQ.; and,*** |
| 18   FORD MOTOR COMPANY, a Corporation, and DOES 1 through 10, inclusive, | |
| 19        Defendants. | **(2) VIOLATION OF THE CONSUMERS LEGAL REMEDIES ACT, CAL. CIV. CODE SECTION 1750, *ET SEQ.*** |
| 20 | |
| 21 | |
| 22 | |
| 23 | **JURY TRIAL DEMANDED** |

24

25

26

27

28

Plaintiff Cynthia Martin ("Plaintiff"), individually and on behalf of all other members of the public similarly situated, brings this action against Defendant Ford Motor Company, Inc. ("Defendant" or "Ford"), upon information and belief, except as to her own actions, the investigation of her counsel, and the facts that are a matter of public record, and alleges as follows:

## INTRODUCTION

1.     The 2009-2012 Ford Escape Hybrid and the 2009-2012 Mercury Mariner Hybrid vehicles sold in the state of California ("Class Vehicles") are designated as Partial Zero Emissions ("PZEV") vehicles.

2.     Pursuant to California Code of Regulations ("CCR") Title 13, Section 1962.1, 2035, 2037 and 2038, PZEV vehicles distributed as new vehicles by Ford shall have 15-year 150,000-mile warranty coverage for emissions related components, as defined herein. Ford shall warrant to the ultimate purchaser and each subsequent purchaser of a Ford vehicle for 15-years or 150,000 miles that the vehicle is: (1) Designed, built, and equipped so as to conform with all applicable regulations adopted by the Air Resources Board pursuant to its authority in chapters 1 and 2, part 5, division 26 of the Health and Safety Code; and (2) Free from defects in materials and workmanship which cause the failure of a warranted part to be identical in all material respects to the part as described in the vehicle or engine manufacturer's application for certification, including any defect in materials or workmanship which would cause the vehicle's on-board diagnostic malfunction indicator light to illuminate. Furthermore, Ford shall warrant to the ultimate purchaser and each subsequent purchaser of a Ford vehicle for 15-years or 150,000 miles that the vehicle: (1) is designed, built, and equipped so as to conform with all applicable regulations adopted by the Air Resources Board pursuant to its authority in chapters 1 and 2, part 5, division 26 of the Health and Safety Code; and (2) Will pass an inspection established under section 44012 of the Health and Safety Code ("inspection"). This is collectively referred to as the "California Emissions Warranty."

3.     This consumer class action arises out of Ford's failure to properly identify and pay for all of the parts and labor that should correctly be covered for 15 years or 150,000 miles,

CLASS ACTION COMPLAINT

pursuant to California Code of Regulations ("CCR") Title 13, Section 1962.1, 2035, 2037 and 2038, ("California Emissions Warranty"), relating to PZEV vehicles. As a result, Plaintiff and members of the Class and Subclass are paying out of pocket for repairs that should be covered under the California Emissions Warranty. Plaintiff's claims apply to 2009-2012 Ford Escape Hybrid and the 2009-2012 Mercury Mariner Hybrid vehicles, and to all other Ford Partial Zero Emissions Vehicles with California emissions warranties that are the same or similar to the identified Ford Escape and Mercury Mariner vehicles ("Class Vehicles").

4.    Ford has violated, and continues to violate, California law in that Ford fails to cover all of the emissions components that Ford is required to cover under the California Emissions Warranty for 15-years or 150,000 miles whichever occurs first, as required by CCR 1962.1, 2035, 2037, and 2038, including specifically the hybrid system water pump.

5.    In addition to Ford failing to cover all of the emissions components that Ford is required to cover under the California Emissions Warranty for 15-years or 150,000 miles, Ford fails to comprehensively identify to consumers and factory authorized repair facilities all of the parts that should be covered under the California Emissions Warranty, in order to limit the warranty coverage for those parts.

6.    Martin seeks reimbursement for, *inter alia*, all out of pocket costs paid for repairs that should have been covered under the California Emissions Warranty, including, without limitation, the hybrid system water pump, and an injunction to compel Ford to properly identify and cover all parts that should be covered under the California Emissions Warranty.

## BACKGROUND

7.    For decades, Ford has been in the business of importing and distributing Ford and Mercury vehicles to the State of California, with the intent to sell Ford and Mercury vehicles to consumers in California. As such, these vehicles have been subject to state and federal regulations regarding both emissions standards and regarding Ford's obligations to provide consumers with warranties relating to emissions parts.

8.    California Code of Regulations section 1962.1, 2035, 2037, and 2038, requires that, for PZEV vehicles, all defects in materials or workmanship that would cause the vehicle's

CLASS ACTION COMPLAINT

1    on-board diagnostic malfunction indicator light to illuminate (as defined in CCR section 2037),

2    all defects in materials or workmanship that would increase emissions, and all defects in

3    materials or workmanship that would result in the vehicle not being able to pass a California

4    smog check are warranted for *15- years* or *150,000 miles*, whichever occurs first (italics added),

5    pursuant to the California Emissions Warranty. The 15-year warranty period is reduced to 10

6    years or 150,000 miles only for "a zero-emission energy storage device used for traction power

7    (such as a battery, ultracapacitor, or other electric storage device)." The Class Vehicles are all

8    defined as PZEV vehicles pursuant to California Code of Regulations 1962.1.

9         9.    The Class Vehicles are Partial Zero Emissions Vehicles. Accordingly, pursuant

10   to the California Code of Regulations, Ford is required to cover all parts that satisfy Section

11   1962.1, 2035, 2037, and 2038, for 15-years or 150,000 miles, unless the emissions part is a

12   battery or other zero emission storage device, wherein the warranty is 10-years or 150,000

13   miles.

14        10.   Ford fails to comply with these statutory requirements.

15        11.   Ford is engaged in a nefarious scheme to limit its warranty exposure under

16   California's emissions warranty requirements in violation of California emissions law by

17   unilaterally defining and wrongfully limiting the parts that should properly be identified as parts

18   covered by the California Emissions Warranty, and covered for 15-years or 150,000 miles under

19   CCR Section 1962.1.

20        12.   Section 1962.1 requires that, relating to Class Vehicles, any warranted part, as

21   defined by the CCR, that would cause the vehicle's on-board diagnostic malfunction indicator

22   light to illuminate, increase emissions or that would result in the vehicle not being able to pass a

23   California smog check must be covered for 151years or 150,000 miles. However, Ford's

24   California Emissions Warranty for the Class Vehicles identifies only a handful of emissions

25   parts that Ford contends qualify for the California Emissions Warranty's 15-year or 150,000-

26   mile warranty coverage. That list, generated by Ford, for its own financial benefit to save

27   warranty costs, is woefully inadequate and incomplete and fails to identify, or provide extended

28

CLASS ACTION COMPLAINT

1  warranty coverage for, *all* of the emissions related parts that, in fact, qualify for extended 15-

2  year or 150,000-mile coverage under Section 1962.1.

3    13.   Ford is acting as alleged herein in order to limit its warranty exposure. By

4  narrowly self-defining the parts that are required to be covered under the California Emissions

5  Warranty, Ford is able to reduce the amount of money that Ford spends on warranty-related

6  repairs, knowing that most if not all dealerships or consumers will not investigate or understand

7  what components should actually and correctly be covered under the California Emissions

8  Warranty as required by the California Code of Regulations.

9    14.   As a result of Ford's conduct, Ford and Class members have paid and are

10  continuing to pay out of pocket for repairs that should be covered under the California

11  Emissions Warranty.

12    15.   Martin's theory does not depend on the premise that CARB was deceived by the

13  information that Ford submitted, or that CARB ever expressed a concern about Ford's

14  classification of components as being covered by the California Emissions Warranty. Plaintiff is

15  not accusing CARB of mismanagement or blaming CARB for Ford's inaccuracy. Ford is alone

16  is responsible for selecting and identifying to CARB the parts that Ford has unilaterally

17  identified as being covered by the California Emissions Warranty, as part of its application for

18  vehicle certification. That list may be correct as far as it goes or as far as CARB may know. But,

19  as Plaintiff alleges, the list of parts Ford submitted to CARB was incomplete, as evidenced by

20  Plaintiff's own experience.

21                    **JURISDICTION AND VENUE**

22    16.   This Court has original jurisdiction over the subject matter of this action pursuant

23  to 28 U.S.C. § 1332(d)(2)(A) because: (i) Class Members are citizens of a state different from

24  that of Ford; and (ii) aggregating the claims of individual Class Members, the total matter in

25  controversy exceeds the sum or value of $5,000,000, exclusive of interests and costs. Further, 28

26  U.S.C. § 1332(d)(5) does not apply because (i) Ford is not a state, state official, or other

27  governmental entity against whom the Court may be foreclosed from ordering relief, and (ii) the

28  number of Class Members in the aggregate exceeds 100.

17.     This Court has personal jurisdiction over Ford because Ford has sufficient minimum contacts with California, having intentionally availed itself of the California market so as to render the exercise of jurisdiction over it by this District Court consistent with traditional notions of fair play and substantial justice.

18.     Venue is proper in this Court pursuant to 28 U.S.C. §1391 because Ford conducts business within the State of California, has failed to designate with the office of the California Secretary of State a principal place of business in California, and a substantial part of the events giving rise to the claims alleged herein occurred in this District.

## PARTIES

19.     Cynthia Martin is, and at all times relevant hereto has been, a resident and citizen of the State of California.

20.     Ford was and is, upon information and belief, a Michigan corporation, doing business in the State of California. Ford sells PZEV vehicles and Hybrid Vehicles, including the Class Vehicles, in the State of California.

21.     The true names and capacities of Defendants sued in this Complaint as Does 1 through 10, inclusive, are currently unknown to Martin, and therefore Martin sues such Defendants by such fictitious names. Martin is informed and believes, and thereon alleges, that DOES 1 through 10 were the partners, agents, owners, shareholders, managers, or employees of Ford at all relevant times.

22.     Martin is informed and believes, and on that basis alleges, that each of the fictitiously named Defendants was in some manner legally responsible for the actionable and unlawful actions, policies and practices as alleged herein. Martin will amend this Complaint to set forth the true names and capacities of said Defendants, along with the appropriate charging allegations, when the same have been ascertained. Each reference in this Complaint to "Ford" or "Defendant" is also a reference to all Defendants sued as Does 1 through 10.

23.     Martin reserves the right to expand, limit, modify, or amend these allegations at any time, based upon, inter alia, changing circumstances and/or new facts obtained during discovery.

## SUBSTANTIVE ALLEGATIONS

24.    On December 28, 2010, Martin purchased a new 2011 Ford Escape Hybrid, VIN 1FMCU4K37BKB14242 (the "Martin Vehicle") from Santa Monica Ford, located at 1230 Santa Monica Boulevard, Santa Monica, California 90404. The Martin Vehicle came with Ford's new car warranty, and the California Emissions Warranty.

25.    The Martin Vehicle, as well as all Class Vehicles, are PZEV Vehicles certified for sale by Ford in the State of California. Accordingly, the Class Vehicles are covered by the emissions warranty requirements in the California Code of Regulations.

26.    California Code of Regulations Section 1962.1, California Code of Regulations Section 2035, *et seq.*, California Code of Regulations Section 2037, *et seq.*, and California Code of Regulations Section 2038, *et seq.*, establish the minimum warranty coverage that Ford is required to provide to consumers relating to Ford PZEV Vehicles and Hybrid Vehicles that Ford imports and distributes in California.

27.    Pursuant to California Code of Regulations Section 2035, with regard to 1990 and subsequent model year vehicles, a "warranted part" is defined as "any part installed on a motor vehicle or motor vehicle engine by the vehicle or engine manufacturer, or installed in a warranty repair, which affects any regulated emission from a motor vehicle or engine which is subject to California emission standards."

28.    Furthermore, California Code of Regulations Section 2037(b) states: "The manufacturer of each motor vehicle or motor vehicle engine shall warrant to the ultimate purchaser and each subsequent purchaser that the vehicle or engine is:

(1)    Designed, built, and equipped so as to conform with all applicable regulations adopted by the Air Resources Board pursuant to its authority in chapters 1 and 2, part 5, division 26 of the Health and Safety Code; and

(2)    Free from defects in materials and workmanship which cause the failure of a warranted part to be identical in all material respects to the part as described in the vehicle or engine manufacturer's application for certification, including any defect in materials or workmanship which

CLASS ACTION COMPLAINT

would cause the vehicle's on-board diagnostic malfunction indicator light to illuminate, for a period of three years or 50,000 miles, whichever first occurs; and

(3) Free from defects in materials and workmanship which cause the failure of a warranted part described in section (c) below for seven years or 70,000 miles, whichever first occurs."

29. California Code of Regulations Section 2037(c) states:

(1) Each manufacturer shall identify in its application for certification the "high-priced" warranted parts which are:

(A) For 1990 through 2007 model year vehicles: [i] included on the Board's "Emissions Warranty Parts List" as last amended February 22, 1985, incorporated herein by reference, and; [ii] have an individual replacement cost at the time of certification exceeding the cost limit defined in section (c)(3);

(B) For 2008 and subsequent model year vehicles: [i] subject to coverage as a warranted part in section (b)(2) above, and; [ii] have an individual replacement cost at the time of certification exceeding the cost limit defined in section (c)(3).

(2) The replacement cost shall be the retail cost to a vehicle owner and include the cost of the part, labor, and standard diagnosis. The costs shall be those of the highest-cost metropolitan area of California.

(3) The cost limit shall be calculated using the following equation:

$$\text{Cost limit } \{n)\} = \$300 \times (CPI\{n-2\}) / 118.3$$

Cost limit {n) is the cost limit for the applicable model year of the vehicle rounded to the nearest ten dollars.

30. With regard to PZEV Vehicles, California Code of Regulations 1962.1 extends the performance and defects warranty period set forth in subdivision 2037(b)(2) and 2038(b)(2) to 15-years or 150,000 miles, whichever occurs first, except that the time period is to be 10-

1    years for a zero-emission energy storage device used for traction power (such as a battery,

2    ultracapacitor, or other electric storage device). Section 1962.1(D) states, in relevant part:

3    "(D) *Extended Warranty*. Extend the performance and defects warranty period set forth in

4    subdivision 2037(b)(2) and 2038(b)(2) to 15 years or 150,000 miles, whichever occurs first

5    except that the time period is to be 10 years for a zero-emission energy storage device used for

6    traction power (such as a battery, ultracapacitor, or other electric storage device)."

7        31.    In short, the California Code of Regulations section 1962.1 requires that, for

8    PZEV vehicles, all defects in materials or workmanship that would cause the vehicle's on-board

9    diagnostic malfunction indicator light to illuminate [as defined in the California Code of

10    Regulations section 2037(b)], that would increase the vehicle's emissions, or that would result

11    in the vehicle not being able to pass a California smog check are warranted for *15-years* or

12    *150,000 miles*, whichever occurs first (italics added). The 15-year warranty period is reduced to

13    10-years or 150,000 miles only for batteries or zero-emission energy storage devices.

14        32.    On July 17, 2018, at 89,414 miles, the Martin Vehicle was presented by Martin

15    for repairs at Star Ford Lincoln. Star Ford Lincoln ("Star Ford") is a Ford authorized repair

16    facility located in Glendale, California, located at 1101 South Brand Boulevard, Glendale,

17    California 91204. Martin complained to Star Ford that the wrench light would come on and off,

18    that the transmission would not shift properly and that the transmission would rev higher than

19    normal before it would shift. Star Ford diagnosed that the Martin Vehicle had a defective hybrid

20    system water pump.  The hybrid system water pump is designed to cool hybrid system

21    components of the Class Vehicles. The consequences of the hybrid system water pump being

22    defective as experienced by Martin are typical of what the other drivers of Class Vehicles would

23    experience if a hybrid system water pump installed in a Class Vehicle became defective and no

24    longer functioned as designed. Star Ford replaced the hybrid system water pump and cleared the

25    codes. The repair record indicated that diagnostic fault codes P0A7C and P1000 were present

26    prior to the repairs being performed. The fault codes were used in order to diagnose the defect.

27    Ford did not cover the repair under the Ford warranty. As a result, Martin paid for the repair.

28

CLASS ACTION COMPLAINT

33.     The failure of the hybrid system water pump caused the presence of diagnostic fault codes P0A7C and P1000 and caused the Martin Vehicle's on-board diagnostic malfunction indicator light to illuminate. As a result, pursuant to California Code of Regulations 2037(b)(2) and California Code of Regulations 1961.2, the repairs relating to the hybrid system water pump should have been covered under the 15-year 150,000-mile California emissions warranty. Furthermore, the presence of diagnostic fault codes P0A7C and P1000 would have caused the Martin Vehicle to fail an inspection established under section 44012 of the California Health and Safety Code. Finally, the defective hybrid system water pump caused an increase in the Martin Vehicle's regulated emissions, by causing the Martin Vehicle's engine to rev excessively before shifting, by causing transmission to not shift properly, and by causing other problems. As a result, pursuant to California Code of Regulations 2037(b)(2) and California Code of Regulations 1961.2, the repairs relating to the hybrid system water pump should have been covered under the 15-year 150,000-mile California emissions warranty. Thus, the repairs on July 17, 2018 at 89,414 should have been covered by Ford under the 15-year 150,000-mile California Emissions Warranty. The repairs were not covered. As a result, Martin paid $617.26 for the repairs.

34.     Ford is unilaterally limiting all of the parts that should properly be identified as covered under the California Emissions Warranty. Ford's warranty for the Class Vehicles identifies only a handful of emissions parts that Ford contends qualify for the 15-year or 150,000-mile California Emissions Warranty. That list, generated by Ford for its own financial benefit, is woefully inadequate and incomplete and fails to identify, or provide extended warranty coverage for, *all* of the emissions parts that, in fact, qualify for extended 15-year or 150,000- mile coverage under Section 1962.1, 2035, 2037, and 2038, including, specifically, the hybrid system water pump.

35.     The details of how Ford applied the California Code of Regulations formula with respect to the Martin Vehicle are exclusively within Ford's possession. Similarly, the information regarding what other parts satisfied the California Code of Regulations

CLASS ACTION COMPLAINT

1    requirements but were not identified by Ford as covered under the California Emissions

2    Warranty is also in the exclusive possession of Ford.

3          36.    On September 21, 2020, counsel for Martin delivered Ford a written notice

4    pursuant to California Civil Code Section 1782, alerting Ford to Martin's claims under the

5    Consumers Legal Remedies Act relating to said unlawful warranty practices, and provided Ford

6    an opportunity to take actions to remedy said unlawful practices. To date, on information and

7    belief, Ford has not remedied said unlawful practices.

8          37.    Ford has acted as alleged herein in an effort to reduce the amount of money that

9    Ford spends on warranty-related repairs, knowing that most if not all dealerships and consumers

10   will not investigate or understand what components should actually be covered under the

11   California Emissions Warranty. Ford's conduct is part of a systematic effort by Ford to avoid

12   complying with California law. If Ford complied with the terms of California law by properly

13   identifying all parts that are covered under the California Emissions Warranty, then Ford

14   dealerships would properly provide warranty coverage for covered all parts, and consumers

15   would not have to pay out of their own pocket for said repairs.

16         38.    Ford's conduct violates California's unfair business practices statute, California

17   Business and Professions Code sections 17200 *et seq.* (the "UCL"), and violates the Consumers

18   Legal Remedies Act, Civil Code sections 1750, *et seq.* (the "CLRA").

19         39.    Martin and other Class members have suffered damage as a result of Ford's

20   wrongful, unfair, and unlawful conduct.

21         40.    Martin also seeks injunctive relief compelling Ford to properly and fully identify

22   the parts that should be covered by the California Emissions Warranty and identify the correct

23   warranty periods for those components. Ford's continued failure to cover the hybrid system

24   water pump, which should be covered under warranty, will expose Plaintiff and Class members

25   to a sufficient likelihood of future harm in the event those parts fail. Martin and other Class

26   members still own Class Vehicles and, in the future, will need to repair or replace emissions-

27   related components that are entitled to extended warranty coverage pursuant to the California

28   Emission Warranty, but which Ford fails to cover. Reimbursement of past out-of-pocket

expenses incurred to repair and/or replace the hybrid system water pump will not be an adequate remedy at law for those Class members who have not yet experienced the failure of their hybrid system water pump. For Class Members who have yet to experience the failure of their hybrid system water pump, an injunction is the adequate remedy that will provide them notice and protect them from future harm.

## MARTIN'S CLASS ACTION ALLEGATIONS

41.     Martin re-alleges and incorporates by reference each allegation set forth above.

42.     Martin brings this action pursuant to Federal Rules of Civil Procedure Rules 23(a), (b)(2) and (b)(3) on behalf of herself and Class Members as defined below.

43.     Excluded from the Class are Ford, and its subsidiaries and affiliates; its current and former officers, directors, and employees (and members of their immediate families); and the legal representatives, heirs, successors or assigns of any of the foregoing.

44.     All claims alleged herein arise under California law for which Martin seeks relief authorized by California law.

45.     Martin's proposed Class consists of and is defined as follows:

> All persons who purchased or leased Class Vehicles, registered in the State of California ("Class").

46.     Martin's proposed Subclass consists of and is defined as follows:

> All Class members who incurred out-of-pocket expenses to repair the hybrid system water pump ("Subclass").

47.     Members of the Class and Subclass are referred to herein as "Class members."

48.     Martin reserves the right to redefine the Class and Subclass and to add subclasses as appropriate based on further investigation, discovery, and specific theories of liability.

49.     As required by Fed. R. Civ. P. 23(a)(2) and (b)(3), There are common questions of law and fact as to Class and Subclass members that predominate over questions affecting only individual members, including, but not limited to:

CLASS ACTION COMPLAINT

(a) Whether Ford has failed and is failing to identify all of the parts and labor that should be covered under the extended 15-year 150,000-mile California Emissions Warranty, pursuant to California law;

(b) Whether Ford has engaged in and is engaging in a systematic business practice of failing to identify all of the parts and labor which should be covered under the extended 15-year 150,000-mile California Emissions Warranty, pursuant to California law;

(c) Whether Ford's conduct is an unlawful and unfair business practices in violation of California Business & Professions Code section 17200, *et seq.*;

(d) Whether Martin and Class Members are entitled to injunctive relief regarding Ford's failure to identify all of the parts and labor which should be covered under the 15-year 150,000-mile California Emissions Warranty;

(e) Whether Ford's conduct is violating the Consumers Legal Remedies Act, Civil Code section 1750, *et seq.*; and

(f) The appropriate amount of restitution, monetary penalties or damages resulting from Ford's violations of California law.

50. There is a well-defined community of interest in the litigation and the Class members are readily ascertainable:

(a) Numerosity: As required by Fed. R. Civ. P. 23(a)(1), the Class Members are so numerous that joinder of all Class Members would be unfeasible and impractical. The membership of the entire Class is unknown to Martin at this time; however, the Class is estimated to be greater than one hundred (100) individuals and the identity of such membership is readily ascertainable by inspection of Ford's records.

(b) Typicality: As required by Fed. R. Civ. P. 23(a)(3), Martin is qualified to, and will, fairly and adequately protect the interests of each Class Member with whom he has a well-defined community of interest, and Martin's claims (or defenses, if any) are typical of all Class Members as demonstrated herein.

CLASS ACTION COMPLAINT

(c)    Adequacy: As required by Fed. R. Civ. P. 23(a)(4), Martin is qualified to, and will, fairly and adequately protect the interests of each Class Member with whom he has a well-defined community of interest and typicality of claims, as demonstrated herein. Martin acknowledges that she has an obligation to make known to the Court any relationship, conflicts or differences with any Class Member. Martin's attorneys, the proposed Class counsel, are versed in the rules governing class action discovery, certification, and settlement. Martin has incurred, and throughout the duration of this action, will continue to incur costs and attorneys' fees that have been, are, and will be necessarily expended for the prosecution of this action for the substantial benefit of each Class Member.

(d)    Superiority: As required by Fed. R. Civ. P. 23(b)(3), the nature of this action makes the use of class action adjudication superior to other methods. A class action will achieve economies of time, effort, and expense as compared with separate lawsuits, and will avoid inconsistent outcomes because the same issues can be adjudicated in the same manner and at the same time for the entire class.

## TOLLING OF THE STATUTE OF LIMITATIONS

51.    Ford has actively engaged in misleading and dishonest conduct relating to its failure to identify all of the parts and labor that should be covered under the California Code of Regulations regarding the California Emissions Warranty. Despite acting diligently, Martin and Class members lacked the resources and had no realistic ability to identify the specific parts and labor that should be covered. Martin and Class members cannot be reasonably expected on their own to learn or discover what parts and labor should be covered under the California Emissions Warranty. Therefore, the discovery rule is applicable to the claims asserted by Martin and Class members, and the statute of limitations for bringing the claims set forth herein should be tolled.

52.    Ford has actual and constructive knowledge that it is violating California law by failing to identify all of the parts and labor that should be covered under the California Emissions Warranty. Ford has concealed from Martin and Class members that Ford is violating California law as set forth herein. Any applicable statute of limitation is tolled by Ford's

knowledge, active concealment, and wrongful conduct set forth herein. Ford is further estopped from relying on any statute of limitation because of its concealment set forth herein.

## FIRST CAUSE OF ACTION

### Violation of California Unfair Competition Law

### (Cal. Bus. & Prof. Code §§ 17200, *et seq.*)

53.    Martin re-alleges and incorporates by reference each allegation set forth above.

54.    California Business and Professions Code section 17200, *et seq.* (the "UCL") prohibits "any unlawful, unfair or fraudulent business act or practice." Ford has committed acts of unfair competition proscribed by the UCL, including the acts and practices alleged herein.

55.    The UCL imposes strict liability. Martin need not prove that Ford intentionally or negligently engaged in unlawful or unfair business practices – only that such practices occurred.

56.    Ford is a "person" as defined by Business & Professions Code § 17201.

57.    As a direct and proximate result of Ford's acts and practices in violation of the UCL, Martin and members of the Class have suffered injury in fact and lost money or property as set forth above and will continue to do so.

### Unlawful Prong

58.    A business practice is "unlawful" under the UCL if it is forbidden by law or regulations, including the standard of professional conduct.

59.    The violation of any law or regulation may serve as the predicate for a violation of the "unlawful" prong of the UCL.

60.    Ford's conduct is unlawful because it violates the California Code of Regulations, including the requirement under the California Code of Regulations, by failing to provide coverage under the California Emissions Warranty.

61.    Ford's conduct violates California Code of Regulations section 2037(c) and 2038(c) because Ford fails to identify all of emissions warranted parts as parts that should be covered under the 15-year/150,000-mile California Emissions Warranty.

62.    Ford's conduct is unlawful because it fails on a systemic and classwide basis to provide coverage for all emissions related parts for 15-years or 150,000 miles, as required pursuant to CCR Sections 1962.1, 2035, 2037, and 2028.

63.    Ford's conduct also violates the unlawful prong in that Ford has violated the CLRA as further alleged below.

64.    Ford's' acts of unlawful competition as set forth above present a continuing threat and will persist and continue to do so unless and until this Court issues appropriate injunctive relief. Martin also seeks attorneys' fees and costs pursuant to, *inter alia*, C.C.P. § 1021.5.

<u>**Unfair Prong**</u>

65.    An act or act or practice is unfair if the consumer injury is substantial, is not outweighed by any countervailing benefits to consumers or to competition and is not an injury the consumers themselves could reasonably have avoided. An act or practice also is unfair if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers. An act or practice also is unfair if Martin's claims are "tethered" to specific constitutional, statutory or regulatory provisions. Ford's conduct violates all of these definitions.

66.    As alleged above, Ford engages and has engaged in a systematic business practice of failing to identify for consumers and its factory authorized repair facilities all parts which should be covered the California Emissions Warranty. Ford does this in an effort to reduce the amount of money that Ford spends on warranty-related repairs knowing that it would be very difficult if not impossible for most consumers to discover this unlawful conduct. If Ford complied with California law and properly identified all parts as emissions warranted parts that should be identified as such, then Ford dealerships would properly provide warranty coverage for said parts.

67.    Further, Ford's conduct is unfair because it refuses to provide warranty coverage for all emissions components for the sole purpose of wrongfully limiting its warranty claims, with no regard for the fact that the public is being forced to pay for repairs which should be

covered under the 15-year 150,000 mile California Emissions Warranty. Martin and members of the Class have wrongfully been denied warranty coverage at service centers throughout California, and have suffered injury in fact and a loss of money or property as a result of Ford's unfair business acts and practices as set forth in detail.

68.    Ford's failure to properly identify all emission components as parts that should have been covered under the 15-year 150,000 mile California Emissions Warranty, is a uniform, and systematic statewide business practice on the part of Ford to minimize the amount of money that Ford has to pay out in warranty claims. This conduct violates California law.

69.    All of the acts and practices of Ford as described in this complaint constitute "unfair" business acts and practices. A business act or practice is "unfair" under the UCL if the reasons, justifications and motives of the alleged wrongdoer are outweighed by the gravity of the harm to the alleged victims. Martin has suffered injury in fact and a loss of money or property as a result of Ford's unfair business acts and practices as set forth herein in detail. It is Martin's information and belief that Class members have also suffered injury as a result of Ford's wrongful conduct.

70.    As a direct and proximate result of Ford's acts and practices in violation of the UCL, Martin and members of the Class have paid out of pocket to repair or replace emissions components that should have been covered by Ford under the 15-year 150,000 mile California Emissions Warranty. Forcing consumers to pay out of pocket to repair or replace vehicle components that should be covered under warranty is clearly unfair.

71.    Ford's conduct does not benefit consumers or competition. Martin and Class members could not reasonably avoid the injury each of them suffered or will suffer, which injury is substantial. Ford's conduct only benefits Ford, by enabling Ford to avoid having to pay warranty claims which should be covered by the 15-year 150,000-mile California Emissions Warranty.

72.    The gravity of the consequences of Ford's conduct as described above outweighs the justification, motive or reason therefor, is immoral, unethical and unscrupulous, and offends

1 | established public policy that is tethered to legislatively declared policies as set forth in the laws

2 | detailed above, or is substantially injurious to the public, for the reasons set forth above.

3 |    73.    Ford's conduct also offends established public policy that is tethered to

4 | legislatively declared policies as set forth in the laws detailed above, including California laws

5 | and regulations regarding California's Emission Control System Warranty Requirements, or is

6 | substantially injurious to the public, for the reasons set forth above.

7 |    74.    To the extent that any definition of "unfair" requires a balancing test or weighing

8 | various factors, such an inquiry is fact intensive and requires a full factual record as to Ford's

9 | justification and motives for its conduct, and as to the impact of Ford's conduct on Martin and

10 | Class members.

11 |    75.    Ford's acts of unfair competition as set forth above present a continuing threat

12 | and will persist and continue to do so unless and until this Court issues appropriate injunctive

13 | relief. Martin also seeks attorneys' fees and costs pursuant to, *inter alia*, C.C.P. § 1021.5.

**Deceptive Prong**

15 |    76.    Ford engages and has engaged in a systematic business practice of refusing to

16 | provide coverage for all parts and labor that should be covered pursuant to the California

17 | Emissions Warranty for 15 years or 150,000 miles, by misrepresenting to its dealerships and

18 | Class members which parts are covered, and by wrongfully concealing from Class members and

19 | its dealerships which parts and labor should be covered. Ford does this in an effort to reduce the

20 | amount of money that it spends on warranty-related repairs. If Ford complied with California

21 | law, then Ford dealerships would properly provide emissions warranty coverage for all of the

22 | applicable parts pursuant to the California Emissions Warranty and extended coverage for 15-

23 | years and 150,000 miles for applicable parts.

24 |    77.    Ford's failure to properly identify all emissions components as warranted parts

25 | which should be identified as such, is a statewide systematic business practice on the part of

26 | Ford to minimize the amount of money that Ford has to pay out in warranty claims. This

27 | conduct violates California law.

28 |

CLASS ACTION COMPLAINT

78.     Said conduct is likely to deceive an ordinary consumer because Ford concealed from consumers and from each of Ford's dealerships all of the emissions components that qualify for extended warranty coverage, in an effort by Ford to minimize the amount of money that Ford has to pay out in warranty claims. One of the ways Ford misleads consumers relates to the information that Ford provides to consumers in its Owner's Handbook, by failing to classify all of the emissions components as parts that should be covered under the 15-year 150,000 mile California Emissions Warranty.

79.     In evaluating the repair costs to be charged, Martin justifiably relied on the information in Ford's Warranty Guide about the parts covered under the emissions warranty and was deceived and suffered damage as a result of Ford's wrongful conduct.

80.     Ford is fully aware of its obligations pursuant to the California Code of Regulations and purports to comply with them. However, in derogation if its legal obligations, Ford conceals from consumers, and from the Ford dealerships, all of the emissions components that should be covered under the California Emissions Warranty, in order to reduce the amount of money that Ford has to pay in warranty claims.

81.     Ford is and was under a duty to disclose to consumers and to its dealerships all of the parts which it is required to cover under the 15-year 150,000-mile California Emissions Warranty, and to provide said coverage.

82.     Ford is and was further under a duty to disclose to consumers and to its dealerships all of the parts which it is required to cover under the 15-year 150,000-mile California Emissions Warranty because:

(a)     Ford is and was in a superior position to know the true state of facts about the duration of the 15-year 150,000-mile California Emissions Warranty and which parts should be covered as emissions warranted parts;

(b)     Ford has made partial disclosures about the extent of the 15-year 150,000-mile California Emissions Warranty;

(c)     Ford has actively concealed and failed to identify all of the parts that are covered under the 15-year 150,000-mile California Emissions Warranty; and,

CLASS ACTION COMPLAINT

(d)    Members of the Class, including Martin, have suffered actual loss due to Ford's concealment and false representations.

83.    The facts concealed and not disclosed by Ford to Martin and members of the Class are material. Had Martin and members of the Class known the true extent of the 15-year 150,000-mile California Emissions Warranty, and had Ford been truthful to its dealerships and members of the Class with regard to identifying all of the parts and repairs that are covered under the 15-year 150,000-mile California Emissions Warranty, Martin and members of the Class would have been able to avoid spending money in order to repair Ford vehicles sold and leased in California. As a result, Martin and members of the Class have suffered damage.

84.    Ford continues to conceal the extent of the 15-year 150,000-mile California Emissions Warranty in order to minimize the amount of money that Ford spends on warranty related repairs.

85.    Furthermore, Ford has refused to, and continues to refuse to provide 15-year 150,000-mile California Emissions Warranty coverage relating to all repairs which should be covered under said warranty pursuant to California law. This refusal is unfair and unlawful.

## SECOND CAUSE OF ACTION

### Violation of the California Consumers Legal Remedies Act

### (Cal. Civil Code §§ 1750 *et seq.*)

86.    Martin re-alleges and incorporates by reference each allegation set forth above.

87.    Ford has violated Section 1770 of the CLRA because it promised both the State of California, and Class members, including Martin, that it would honor the terms of the California Emissions Warranty as set forth in California Code of Regulations sections 2035, 2037, 2038, and 1962.1,; however, Ford has failed to do so.

88.    Martin is a consumer who was wrongfully required to pay for repairs which should have been paid for by Ford pursuant to California Code of Regulations sections 1962.1, 2035, 2037, and 2038. The Martin Vehicle was presented by Martin for repairs at a Ford authorized repair facility, in compliance with the terms and conditions of the Ford warranty, and the California Emissions Warranty. The Martin Vehicle required repairs which should have

CLASS ACTION COMPLAINT

been covered pursuant to the California Emissions Warranty, based upon the Martin Vehicle's mileage and age. Ford wrongfully failed and refused to pay for the warranty repairs due to the unlawful pattern and practice set forth herein. Thus, Martin suffered damage.

89.     Ford is violating the terms of the California Emissions Warranty because it knows it is omitting from the coverage it purports to provide pursuant to the California Emissions Warranty, parts it knows should be covered under the California Emissions Warranty. Ford violates its own written warranty and California law in order to save money. As a result, Martin and Class members have suffered damage.

90.     Martin and Class members have presented Class Vehicles to Ford authorized repair facilities for repairs that should have been covered under California Code of Regulations sections 1962.1, 2035, 2037, and 2038, but coverage has been wrongfully denied to them. As a result, Martin and Class members have suffered damage.

91.     Ford's conduct in warranting, advertising, leasing, selling and distributing vehicles in the State of California, while at the same time knowingly and wrongfully failing to honor the terms of the California Emissions Warranty as set forth in California Code of Regulations sections 1962.1, 2035, 2037, and 2038, constitutes violations of the following subsections of California Civil Code section 1770: (a) Ford represents and has represented that the Class Vehicles have characteristics or benefits which they did not have (Section 1770(a)(5)); (b) Ford has falsely represented that the Class Vehicles were of a particular standard, quality, or grade when they were of another (Section 1770(a)(7)); and (c) Ford advertised the Class Vehicles with the intent not to sell them as advertised (Section 1770(a)(9)).

92.     California Civil Code section 1780(a) provides that any consumer who suffers damage as a result of a violation of the CLRA may bring an action to recover: 1) actual damages, but in no case shall the total award of damages in a class action be less than $1,000, 2) an order enjoining the methods, acts, or practices, 3) restitution of property, 4) punitive damages, and, 5) any other relief that the court deems proper.

93.     California Civil Code section 1781 provides that Martin may pursue this case as a class action.

94.     Martin has provided Ford with notice of its violations of the CLRA pursuant to California Civil Code § 1782(a), and after the requisite waiting time, Ford has failed to provide appropriate relief for its violations of the CLRA.

95.     In addition to requesting injunctive relief pursuant to Civil Code 1782(d) to force Ford to comply with the California Emissions Warranty, Martin also seeks monetary, compensatory and punitive damages.

96.     Martin is entitled to attorneys' fees and costs pursuant to Civil Code section 1780(e).

**PRAYER FOR RELIEF**

WHEREFORE, Martin, on behalf of herself and all others similarly situated, prays for relief and judgment against Ford as follows:

1.      For an order certifying this case as a class action, appointing Martin as the representative of the Class and Subclass, and appointing counsel for Martin as Class Counsel;

2.      That the Court declare, adjudge and decree that that Ford is financially responsible for notifying all Class members about the wrongful conduct set forth herein;

3.      That the Court declare, adjudge and decree that that Ford's failure to identify all of the parts and labor that should be covered pursuant to the California Emissions Warranty, constitutes an unfair and unlawful business practice in violation of California Business and Professions, Civil Code sections 17200, *et seq.*; and violates the California Consumers Legal Remedies Act, Civil Code sections 1750, *et seq*;

4.      For an order enjoining Ford from further deceptive distribution, sales, and lease practices, compelling Ford to properly and fully identify all parts and labor covered pursuant to the California Emissions Warranty; and to reimburse both Martin and Class members for the money wrongfully paid by Martin and Class members relating to repairs which should have been covered by Ford under the California Emissions Warranty;

5.      For an award to Martin and Class members of compensatory and statutory damages as appropriate, including interest, in an amount to be proven at trial;

6.      For an award to Martin and Class members of any repair costs they are owed;

CLASS ACTION COMPLAINT

7.    For a declaration that Ford must disgorge, for the benefit of Martin and Class members, all or part of the ill-gotten profits it received as a result of the wrongful conduct set forth herein, or make full restitution to Martin and Class members;

8.    For the appointment of a receiver as necessary to receive, manage and distribute any and all funds disgorged from Ford and determined to have been wrongfully acquired by Ford as a result of violations of California Business & Professions Code sections 17200, *et seq.*;

9.    For an award of attorneys' fees and costs, as allowed by law;

10.    For an award of attorneys' fees and costs pursuant to California Code of Civil Procedure § 1021.5;

11.    For an award of pre-judgment and post-judgment interest;

12.    For leave to amend the Complaint to conform to the evidence produced at trial; and,

13.    For all other relief as may be appropriate under the circumstances.

Dated: November 11, 2020                Respectfully submitted,

**POMERANTZ LLP**
**THE LAW OFFICE OF ROBERT L. STARR**

By: _____
                Jordan L. Lurie
                Ari Y. Basser
                Robert L. Starr

                *Attorneys for Plaintiff*

CLASS ACTION COMPLAINT